UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHIRLEY MITCHELL | : | CIVIL ACTION |
| | : | NO. 05 CV 4176 |
| v. | : | |
| | : | |
| FIRST RELIANCE STANDARD LIFE | : | |
| INSURANCE COMPANY and THE | : | |
| NEW YORK STATE NURSES ASSOCIATION | : | |
| GROUP LONG TERM DISABILITY PLAN | : | |
| FOR REGISTERED NURSES AT | : | |
| MT. SINAI HOSPITAL | | |

FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY'S
<u>BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

RAWLE & HENDERSON, LLP

By: <u>*s/ Heather J. Holloway*</u>
     Joshua Bachrach, Esquire
     Heather J. Holloway, Esquire
     The Widener Building
     One South Penn Square
     Philadelphia, PA   19107
     Telephone: (215) 575-4200
     Facsimile: (215) 563-2583
     Attorneys for Defendant
     First Reliance Standard Life Ins. Co.

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. FACTUAL HISTORY ............................................................................1

III. LEGAL ARGUMENT ............................................................................5

    a. Summary Judgment Standard ....................................................5

    b. Standard of Review ....................................................................5

    c. Plaintiff can not prevail because she failed to exhaust her administrative remedies ........................................7

    d. Plaintiff can not prevail because she has not shown a Total Disability ..............................................................9

    e. Plaintiff can not prevail because she was no longer an insured when she began to demonstrate a potential impairment .................................................................15

IV. CONCLUSION .....................................................................................16

I.   Introduction

First Reliance Standard Life Insurance Company (First Reliance Standard) insures the New York State Nurses' Association Group Long Term Disability Plan for Registered Nurses at Mount Sinai (the "Plan"). (AR 5-24). Plaintiff, an employee of Mount Sinai stopped working on November 24, 1998 and submitted a disability claim. (AR 344, 353-357, 259-260). The claim was denied because plaintiff was not Totally Disabled. (AR 113-115). Plaintiff was advised, through her counsel, that she had 60 days to appeal the decision but she did not and therefore failed to exhaust her administrative remedies. (AR 113-115). Instead, plaintiff filed this lawsuit. For the reasons discussed below, plaintiff can not prevail and judgment should be entered in favor of First Reliance Standard.

II.   Factual History

The policy provides benefits in the event of a Total Disability. Before benefits become payable, plaintiff must show that an Injury or Sickness prevents her from performing the material duties of her regular occupation for 180 consecutive days (the "Elimination Period"). (AR 9-11). Thereafter, benefits are payable for 36 months if the claimant is Totally Disabled from her "regular occupation." (AR 11, 9). Benefits are payable after 36 months if a claimant is Totally Disabled from "any occupation." (AR 11). Plaintiff's claim was denied because she did not satisfy the policy's initial Elimination Period. (AR 113-115).

Plaintiff was employed as a staff nurse. (AR 344, 354). She identified the duties of her occupation as patient care, lifting, medicating, and CPR. (AR 353). She claimed that she was unable to perform the material duties of her occupation due to insomnia,

pain in her right hand, neck pain and back pain. (AR 353, 344). Plaintiff claimed that she was injured when a garage door hit her in the head. (AR 334). Her neurologist, Lyzette Velasquez, M.D., completed a physician statement on May 28, 1999, six months after the alleged date of loss, diagnosing plaintiff with post traumatic lumbar radiculopathy, cervical lumbar radiculopathy and status post right wrist injury. (AR 259). No records of treatment for insomnia were provided.

According to plaintiff, her symptoms first appeared on November 24, 1998 but she claims that she waited until December 30, 1998 to treat with Dr. Velasquez. (AR 344, 259). No record of treatment on this date has ever been provided to First Reliance Standard. In fact, there are no medical records until a February 3, 1999 report of an MRI scan of plaintiff's right wrist. (AR 370). The scan revealed the "[p]resence of ganglion cyst and degeneration and tearing of the triangular fibrocartilage" but did not identify the onset date of the condition and was not accompanied by any medical report generated on or about the same date reporting any resulting restrictions or limitations. (AR 370). First Reliance Standard also received a March 9, 1999 report of an MRI of plaintiff's cervical spine and a March 26, 1999 MRI scan of plaintiff's lumbosacral spine, but once again, neither identified the onset date of reported abnormalities and neither were accompanied by a report of related restrictions and limitations. (AR 368-369, 414).

On April 13, 1999, still reporting a December 30, 1998 initial visit without documentation, Dr. Velasquez submitted a statement of disability, providing a diagnosis cervical and lumbar radiculopathy and stating that plaintiff was status post right hand fracture. This was the first reference to a fracture. (AR 209). Like the reports of the

2

MRI scan, the physician statement did not identify the date of onset and merely reported that plaintiff would not be able to return to work for the indefinite future. (AR 209).

Plaintiff reported that she underwent physical therapy with Dr. Velasquez through May 1999 and that she was seen by Dr. Cohen; however, records of these visits were not provided to First Reliance Standard. (AR 250). Further, according to plaintiff, her right hand was in a cast for six weeks in February and March 1999. (AR 250). Again, relevant medical records were not provided to First Reliance Standard.

First Reliance Standard received additional records, the earliest of which was an August 3, 1999 report signed by Dr. Velasquez, Diana Daza, R.P.T. and Hal Gutstein, M.D., eight months following the alleged date of loss. (AR 431). According to the report, plaintiff saw her family physician following the November 24, 1998 garage door accident. (AR 431). Again, no record of the referenced treatment was provided to First Reliance Standard. The report again referenced plaintiff's initial December 30, 1998 visit but did not provide an explanation for the one month delay in treatment and did not provide the corresponding office visit record. (AR 431). In addition to the MRI reports referenced above, it was also reported that plaintiff had an MRI of her brain and an EMG study, neither of which were provided to First Reliance Standard. (AR 432). Finally, it was reported that plaintiff had follow-up visits through May 28, 1999, which reportedly showed that she was still symptomatic in the spine and right wrist. (AR 431). As with the other references, no treatment records were provided. (AR 431).

Two years passed before First Reliance Standard received another medical record, a May 20, 2002 "Comprehensive Initial Office visit" report authored only by Dr. Gutstein. (AR 441-442). The visit did not relate to plaintiff's earlier reported injuries but

3

rather related to a May 18, 2002 automobile accident causing neck and back pain felt soon after impact. (AR 441). MRI scans of plaintiff's cervical and lumbar spine were taken with results substantially similar to the earlier scans from 1998. (AR 439-440, 438, 368-369, 414). First Reliance Standard also received additional records beginning July 2002 for treatment of plaintiff's injuries in the recent motor vehicle accident. Although periodic reference was made to the 1998 injury, no documentation of earlier treatment or disability due to the 1998 incident was provided. (AR 435-437, 458, 456-457).

Based on reports and medical records that were never provided to First Reliance standard, Dr. Velasquez continued to report that plaintiff was disabled as a result of the November 24 1998 garage door incident. (AR 446-455). Further, plaintiff's counsel continued to provide additional medical records but none pre-dated 2002. (AR 157-164).

First Reliance Standard denied plaintiff's claim on December 15, 2003. (AR 113-115). The denial was based on the medical records (or lack thereof) from Drs. Velazquez and Gutstein, Ms. Daza and the other physicians referenced in the medical documentation. (AR 114). Reliance Standard advised that it did not receive any medical records for two months following the garage door incident, despite the references to treatment in other medical records. (AR 114). First Reliance Standard acknowledged the existence of a limited amount of records that indicated that plaintiff had restrictions in February and March 1999. However, as no disability was demonstrated in November 1998 when plaintiff stopped working, her individual coverage under the group Plan already terminated. Therefore, even if plaintiff was disabled in February and/or March 1999, Reliance Standard explained that no coverage was available and the claim had to be denied.

The denial letter from First Reliance Standard fully advised plaintiff of the additional information needed from plaintiff to prove her claim, such as the missing medical records. (AR 114). First Reliance Standard further advised plaintiff of her right to appeal the denial. (AR 115). Plaintiff's counsel wrote to First Reliance Standard, only requesting additional documentation, which First Reliance Standard provided. (AR 96-101, 105). Plaintiff never appealed. Therefore, she never exhausted the administrative reviews required under ERISA. As explained below, even if the court could excuse her failure to exhaust, plaintiff failed to sustain her burden of proving eligibility for benefits.

III.   Legal Argument

    a.   Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be entered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Rule 56 (c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Factual disputes that are irrelevant or unnecessary are not material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

    b.   Standard of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-957 (1989), the Supreme Court considered the issue of the appropriate standard of

judicial review of benefit determinations by fiduciaries and plan administrators under ERISA. The Court ruled that "[c]onsistent with established principles of trust law . . . a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*

The policy in this case grants discretion to First Reliance Standard, as it provides:

> First Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(AR 13). Since this plan grants discretionary authority to First Reliance Standard, the decision to deny benefits is subject to the deferential arbitrary and capricious standard. *See Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999). To avoid this standard, plaintiff must come forward with evidence demonstrating that defendant's decision was in fact influenced by a conflict of interest. *See Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1254-55, 59 (2d Cir. 1996). The fact that First Reliance Standard serves as the decision maker and is also responsible for paying any benefits owed does not alter the standard of review. *See Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000). Instead, it is a mere factor to be weighed in deciding whether there was an abuse of discretion. *See Id.*

Under the arbitrary and capricious standard, the plan's decision must be affirmed unless "it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). As stated in *Pagan,* the court's scope of review is narrow and the court may not substitute its

6

own judgment for that of the plan. Under this deferential standard of review applicable to this claim, the decision must be affirmed if it is supported by "substantial evidence." Substantial evidence is "such that a reasonable mind might accept [it] as adequate to support the conclusion reached by the [decision maker]." *See Todd v. Aetna Health Plans*, 62 F. Supp. 2d 909, 913 (E.D.N.Y. 1999) (*quoting Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)). Here, substantial evidence supports defendant's decision that plaintiff was not Totally Disabled.

        c.      Plaintiff can not prevail because she failed to exhaust her administrative remedies

As discussed below, plaintiff can not prevail on the claim because she never demonstrated a Total Disability from her own occupation. However, before addressing the merits of the claim (or lack thereof), this Court should dismiss plaintiff's complaint because she failed to exhaust the administrative remedies available to her when she failed to submit an appeal to First Reliance Standard.

ERISA provides for a "full and fair review," which requires an opportunity to submit an appeal of an adverse benefit determination. *See* 29 U.S.C. § 1133. The Second Circuit "has recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *See Kennedy v. Emire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (*quoting Alfarone v. Bernie Wolff Construction*, 788 F.2d 76, 79 (2d Cir. 1986), *cert denied*, 479 U.S. 915 (1986)). In *Kennedy*, the Court stated that the "requirement that [a] plan provide [appeal] remedies suggests Congress' intent to have courts require exhaustion of these remedies." *See Id.* at 594 (*quoting Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). Because plaintiff failed to exhaust her administrative remedies, she is not entitled to maintain this lawsuit.

7

During the course of this litigation, plaintiff has argued that the December 15, 2003 decision denying her benefit claim was a third determination by First Reliance Standard and that she is excused from exhausting her administrative remedies because the exercise would be futile. Not so. Futility is an exception to the exhaustion requirement. *See Id.* at 594. However, plaintiff can not meet the standard for demonstrating futility.

"Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will relieve the claimant from the requirement." *See Id.* at 594 (citations omitted). The referenced purposes of the ERISA exhaustion requirement are to:

> (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo* [standard of review].

*Id.* at 594 (Citations omitted).

First Reliance Standard initially denied plaintiff's claim, based on a finding that she was not an eligible participant in the Plan. (AR 265-266). Because it was determined that plaintiff was not covered, there was no determination regarding whether she was disabled. (AR 265-266). Plaintiff appealed that decision and First Reliance Standard issued a final determination again limited to the issue of coverage, not disability. (AR 271). After exhausting her administrative remedies on the coverage dispute, plaintiff filed an earlier lawsuit in this Court; however, the parties reached a settlement pursuant to which First Reliance Standard agreed to waive the disputed coverage requirements and

8

further agreed to evaluate plaintiff's claim to determine whether she was Totally Disabled. (AR 165-169).

The release in the prior action specifically states:

> [i]n consideration of the promises and releases contained herein, First Reliance Standard agrees to waive the Evidence of Insurability requirement for Shirley Mitchell and will consider Shirley Mitchell to be an insured under the policy. *However, nothing in this release waives First Reliance Standard's right to investigate the claim or deny the benefit claim in the event it determines that plaintiff did not satisfy the pre-existing condition clause in the policy or it finds that plaintiff was not totally disabled as that term is defined in the policy.*

(AR 166) (Emphasis added). Thus, there is no merit to the argument that First reliance Standard could not address the question of eligibility for benefits during its new review.

On remand, to address the disability claim, First Reliance Standard made a determination that plaintiff was not Totally Disabled and that determination was based on the failure of plaintiff to provide medical records generated on or about the reported date of loss. (AR 113-115). First Reliance Standard fully advised plaintiff of the basis for its decision and advised plaintiff of the additional documentation necessary to support her claim. (AR 113-115). For reasons that were never explained, plaintiff chose not to appeal that decision or provide defendant with the missing records. This does not mean that an appeal would have been futile, however.

First Reliance Standard's denial letter notified plaintiff of her appeal rights and the deadline for appealing. Since the time to appeal has expired, plaintiff has no right to appeal the denial. Therefore, the lawsuit should be dismissed with prejudice. *See Gayle v. United Parcel Service, Inc.*, 401 F.2d 222 (4th Cir. 2005).

    d.    <u>Plaintiff can not prevail because she has not shown a Total Disability</u>

When reviewed on the merits, it is clear that plaintiff has not demonstrated a Total Disability. The burden of proving entitlement to benefits belongs to plaintiff. *See Juliano v. Health Maint. Org. of N.J.*, 221 F.3d 279, 289 (2d Cir. 2000). First Reliance Standard has no burden to actively seek records to demonstrate plaintiff's claim. *See e.g. Pinto v. Reliance Standard Life Ins. Co.* 214 F. 3d 377, 394, n. 8 (3d. Cir. 2000); *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) ("An administrator's decision is not arbitrary or capricious for failing to take into account evidence not before it"); *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984).

Plaintiff's claim arose in November 1998. The earliest records provided to First Reliance Standard were three MRI reports taken between February 3, 1999 and March 26, 1999. (AR 370, 368-369, 414). These diagnostic tests by themselves do not demonstrate a Total Disability on or about November 1998 for a number of reasons. First, the mere presence of the abnormalities in the reports do not demonstrate a disability. *See Keiser v. First UNUM Life Ins. Co.*, 2005 U.S. Dist. LEXIS 10987 (S.D.N.Y. June 8, 2005). In *Keiser*, the Court specifically found that the plaintiff "suffered injuries from the accident [but the court also found] that those injuries did not leave [the plaintiff] disabled, as that term is defined in the LTD Policy." *Id.* at *21. Likewise, here, the MRI reports demonstrate an abnormality. Even if it is assumed that the abnormalities arose on November 24, 1998, positive diagnostic findings are not, by themselves, evidence of a Total Disability. *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 880 (9th Cir. 2004).

The MRI reports also fail to demonstrate a Total Disability on or about November 1998 because the records do not identify the onset date of the reported abnormalities. The MRI scans were taken two to three months after the reported date of injury. There are no medical records linking the reported abnormalities to the November incident, excepting only the unexplained conclusions of plaintiff's treating physician rendered months or years following the reported date of injury. This is significant because if the abnormalities existed prior to November 1998, then plaintiff's ability to continue working may negate her claim of disability. Alternatively, as explained below, assuming the reported abnormalities are disabling but they did not develop until after plaintiff stopped working, then coverage no longer existed.

The unsupported, retrospective conclusions of Total Disability from plaintiff's physicians do not show a Total Disability. In *Hany-Badawy v. First Reliance Standard Life Ins. Co.* 2005 U.S. Dist. LEXIS 21868 (S.D.N.Y. Sept. 28, 2005), the court specifically rejected the claimants argument that unsupported conclusions of a treating physician must be adopted. *See Id.* "The fact that at certain points [the claimant's] physicians considered his attacks to be more frequent or more incapacitating does not mean that First Reliance Standard's decision making here was arbitrary and capricious when objective evidence could not support these conclusions." *See Id.* at *30 (*citing Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

Although the MRI scans may not pinpoint the exact date of the reported abnormalities, treatment records may have provided evidence of a disabling condition and may have created a link between the reported findings, alleged disability and the

11

November 1998 incident. First Reliance Standard reasonably expected that plaintiff would provide the records for services that were performed.

In *Couture v. Unum Provident Corp.*, 315 F. Supp. 2d 418, 431 (S.D.N.Y. 2004), the court stated "[s]ubjective complaints of pain can be relevant in making benefits determinations [b]ut it is not unreasonable – *especially in light of available objective medical evidence . . . for defendants to seek additional objective data rather than merely rely on subjective complaints*." (emphasis added, citations omitted). Although plaintiff provided the conclusions of her physicians that she was disabled, the objective evidence of disability that may (or may not) have appeared in the treatment records was never provided to First Reliance Standard. Therefore, plaintiff did not sustain her burden.

On more than one occasion, Dr. Velasquez supported plaintiff's claim of disability, in part, relying on her initial examination of December 30, 1998. (AR 259, 209). Putting aside, for the moment, the fact that the initial examination occurred more than a month following the reported date of loss, no explanation has ever been provided for the failure of plaintiff or her representative to provide the corresponding treatment record. Five months following the reported date of loss, Dr. Velasquez reported that plaintiff was not capable of standing, sitting, walking or driving in excess of one hour but reported that plaintiff was capable of lifting at a sedentary level work capacity. (AR 260). On what does the physician base her conclusions? What physical examinations were conducted? What progress was made and on what date? These are questions that plaintiff has not even attempted to answer with the medical records provided.

Again relying, in part on the undocumented December 30, 1998 examination, Dr. Velasquez submitted a statement of disability providing several diagnoses. (AR 209).

However, the report of disability is flawed because like the MRI reports, the statement does not identify the onset date of the reported abnormalities. It is possible that plaintiff was not disabled on November 1998 but later became disabled due to an exacerbation of her condition. *See* Keiser, 2005 U.S. Dist. LEXIS 10987, (where plaintiff's physicians reported improvement in her condition for one year following the motor vehicle accident but then classified her as disabled). However, as explained above, when plaintiff fails to continue working in the interim, her coverage ceases. Again, plaintiff failed to address this issue when she opted not to provide the relevant medical records surrounding the date of her alleged disability.

There are references to numerous records that were not provided to First Reliance Standard. Where are the treatment records from plaintiff's reported physical therapy with Dr. Velasquez, that reportedly continued to May 1999? (AR 250). Where are the treatment records from plaintiff's reported treatment with Dr. Cohen? (AR 250). Where are the records of treatment surrounding the reported placement of a cast on plaintiff's hand in February 1999? (AR 250). Who is the "family doctor" that plaintiff saw, apparently immediately or soon after the November 1998 injury and where are his records? (AR 431). Why was there a one month delay between the reported date of injury and plaintiff's first visit with Dr. Velasquez? How is it that Dr. Velasquez "medically determined that [plaintiff] was unable to perform her occupational[sic] for 11/24/99[sic] through 7/31/99" when she did not see plaintiff until December 30, 1998? (AR 433, 259). Likewise, how is it that she reported that the "proximate cause of the patients signs, symptoms and conditions for which we treated her was the accident on or about 11/24/98" when she did not see plaintiff until one month later? (AR 433). On

what did Dr. Velasquez rely when she determined that the "combination of new injuries as well as aggravation of preexisting conditions caused [plaintiff] to have partial permanent impairments of the head, neck, spine and right wrist" and that "[i]t is unlikely she will be able to perform her usual occupational, recreational, and social activities in a completely symptom free manner" or that the "signs, symptoms and disabilities noted above are permanent and will probably progress over time?" (AR 433). In fact, what are the "new injuries" and what are the "preexisting conditions?" (AR 433). Each of these questions are reasonable. The answers should be contained in the medical records. Plaintiff's failure to provide the records is the first step in her failure to meet her burden.

Additional questions are presented by plaintiff's submission of medical records from Hal Gutstein, generated while he was treating plaintiff for an unrelated injury in 2002. (AR 441-442). It is clear from the face of the records that plaintiff was not reporting to Dr. Gutstein at that time for the November 1998 injury but rather reported to him for injuries reportedly sustained in a May 18, 2002 automobile accident. It is ironic that plaintiff has provided records of medical treatment immediately following an injury sustained four years following the date of loss but can not provide medical records immediately following the injury that allegedly rendered her disabled. Perhaps Dr. Gutstein's records demonstrate a disability in 2002 (after coverage under the policy ended), but certainly his records do not demonstrate a disability in November 1998. (AR 441-442). Again, plaintiff's coverage under the Plan had ended by 2002.

For some unexplained reason, on February 13, 2003, Dr. Gutstein decided to comment on plaintiff's November 1998 injury and not the May 2002 injury for which he had been treating her most recently. (AR 444-445). He reported restrictions and

14

limitations relating to the November 24, 1998 incident. (AR 444-445). Based on what? With the exception of the one letter co-authored by Dr. Gutstein, Dr. Valasquez and Ms. Daza, no treatment records were provided by Dr. Gutstein for the November 1998 incident. As noted at length above, the objective medical findings and diagnostic testing leave many unanswered questions. Simply stated, plaintiff failed to sustain her burden of proof.

      e.      Plaintiff can not prevail because she was no longer an insured when she began to demonstrate a potential impairment

As noted above, plaintiff provided results from three MRI scans taken two – three months following the alleged date of injury. There has been no credible submission, indicating that the abnormalities documented in the MRI reportes developed on or about the alleged date of loss. Even assuming the reported abnormalities are disabling, if they did not develop until after plaintiff stopped working, then coverage no longer existed.

The policy clearly states that "[t]he insurance of an Insured will terminate" when "the Insured ceases to meet the Eligibility Requirements." (AR 15). The policy also clearly identifies the eligibility requirements, as follows:

> **ELIGIBILITY REQUIREMENTS**: A person is eligible for insurance under this Policy if he/she:
> (1)    is a member of an Eligible Class, as shown on the schedule of Benefits page; and
> (2)    has completed the Waiting Period, as shown on the Schedule of Benefits page.

(AR 15). Eligible Classes are identified in the Policy as: "[e]ach active, Full-time and part-time Registered Nurse except any person employed on a temporary or seasonal basis." (AR9).

15

Plaintiff stopped working on November 24, 1998. (AR 344, 354). She did not demonstrate a Total Disability as of that date and was no longer a member of an Eligible Class when she was no longer an active full-time or part-time registered nurse. (AR 344, 354, 9). Therefore, her coverage under the policy terminated. Therefore, any documentation showing a Total Disability occurring after November 24, 1998 is not covered under the terms of the policy.

IV.  Conclusion

Instead of demonstrating a Total Disability, plaintiff asks that First Reliance Standard and this Court (1) accept plaintiff's report that she was injured by a garage door[2], (2) accept, without documentation, that plaintiff was injured as a result of the November 1998 incident, (3) accept, without documentation that the abnormalities reported in the February 3, 1999, March 9, 1999 and March 26, 1999 MRI scans are the result of the November 1998 incident, (4) accept, without documentation, that plaintiff was seen by her physicians following the incident and that the examinations provided findings consistent with Total Disability, and (5) accept the unsupported conclusions of her treating physicians of Total Disability. Plaintiff seeks to meet her burden without proof and yet, she somehow argues that an appeal process would be futile. For the reasons discussed above, plaintiff can not prevail on her claims against First Reliance

---

[2] The August 3, 1999 records from Dr. Velasquez reports that plaintiff saw the police after the incident but no police report was provided to First Reliance Standard.

Standard. Accordingly, summary judgment should be entered in favor of First Reliance Standard.

>RAWLE & HENDERSON, LLP
>
>By: *s/ Heather J. Holloway*
> Joshua Bachrach, Esquire
> Heather J. Holloway, Esquire
> The Widener Building
> One South Penn Square
> Philadelphia, PA   19107
> Telephone: (215) 575-4200
> Facsimile: (215) 563-2583
> Attorneys for Defendant
> First Reliance Standard Life Ins. Co.